SAMUEL F. PLUMER and FREDERICK G. CRARY *v.* WILLIAM ALEXANDER and DAVID MORELL.

1. A pilot, without a release, is not a competent witness for the owner of a boat, in an action for her loss, where the defence is, that the loss accrued through the want of skill, or negligence of the pilot.

2. Where one has a right to erect a dam in a public stream, so as not to obstruct its navigation, persons passing such dam are required to use ordinary care, diligence, and skill; but where these are used, and the dam is such an obstruction as to occasion loss to those attempting its passage, the one erecting or maintaining it must answer in damages, no matter what was the stage of the water at the time of passing it.

ERROR to the Common Pleas of Clarion.

This was an action on the case, brought by William Alexander and David Morell against Samuel F. Plumer and Frederick G. Crary, under the following circumstances:

P. and C. were the owners of a furnace, at which they built a dam over the Clarion river, formerly called Toby's creek, with a *chute* in it for the passage of boats and rafts. A. and M. had a flat-bottomed boat, laden with iron, which they despatched to market, at a time when the waters of the river were high and still rising. The boat was run down the river to Delo's Eddy, a few miles above the dam, and lay there until noon of the next day. In the morning, the flood then beginning to subside, A. went down to

the dam to see if he could pass it with his boat, or if C. could put him through, and had some talk with C. After A. had seen the dam, and talked with C., he returned to the boat and resumed his voyage. Descending the river, the boat entered the *chute*. Towards the foot of the *chute* she sheered to the right, when, the forward oar breaking, she became unmanageable, ran against the shore, swung across the river, stove on the rocks and sunk. A. and M. thereupon brought this action against P. and C., to recover damages for the loss of their boat, occasioned, as they alleged, by the erection of the dam in the river, which obstructed its navigation.

On the trial, the plaintiffs offered John Walters, the pilot of the boat, as a witness, who was objected to as being liable to the plaintiffs for the injury to the boat by his negligence, but was admitted to testify, under exceptions taken by the defendants.

The evidence being closed, the defendants' counsel requested the Court to charge the jury—

1. That the defendants had a right to erect a dam in the Clarion river, provided the same does not obstruct the navigation.

2. That the owners of a dam so erected, are not responsible for an accident, although the dam may have been the remote cause of the accident.

3. That if the jury believe the stage of water was so high that a prudent man would not venture to run the risk of navigating it, the plaintiffs are not entitled to recover.

4. That if the jury believe there was any mismanagement or mistake of the hands in running this dam, the plaintiffs are not entitled to recover.

5. That to enable the plaintiffs to recover, they must satisfy the jury that the stream was in a safe and navigable stage; that the boat was sound and well manned; that there was neither negligence, mismanagement, or rashness in running their boat.

The Court (McCALMONT, President) charged the jury as follows:

"If the dam erected and kept up by defendants was an obstruction to the navigation at the time the injury was received, and the injury was caused by the dam, the plaintiffs are entitled to recover, although the dam was not immediately the cause of the whole of the injury: yet if the dam was the cause of breaking the oar, by which the boat afterwards became unmanageable and was cast on the rocks below, and sunk in consequence of that injury, the plaintiffs would be liable for the whole of the damage sustained. The

lowest measure of damages would be the actual amount of loss and expense the plaintiffs sustained.

"By the Act of 1803, that has been read to you, the defendants have a right to erect and keep up the dam in question, provided it be so erected and kept up as not to obstruct the navigation. The proviso in this Act is not to be taken literally: 4 Watts, 440. If the dam is so erected and kept up, that men with ordinary skill and diligence can navigate the river with safety, it is all that the law would require.

"As we view the case, the questions for you to determine are : Was the dam an obstruction to the navigation of the Clarion river in the spring of 1847, at the time this injury was sustained by the plaintiffs ? and if it was an obstruction, was the dam the cause of the injury and damage to the plaintiffs ?

"We have admitted evidence of the situation and construction of this dam from the time of its erection, because if the plaintiffs succeeded in showing that it was an obstruction to the navigation of the river before that time, the erection and maintenance of it in that order was illegal, and it was for the defendants to show that it was not an obstruction to the navigation at that particular time. Although the dam might have been an obstruction in 1846, and before that time, yet, if the evidence of the defendants has satisfied you, that it was so repaired and altered by the removal of bars and a proper construction of the chute, that the dam was not then an obstruction, but could be safely run with ordinary skill and diligence, the plaintiffs cannot recover, notwithstanding that the dam did contribute towards the injury in a remote degree. This is plain ; for if the dam was so constructed at that time as not to obstruct the navigation or make it unsafe to ordinary skill and diligence in all proper navigable stages of the water, yet if a pilot by accident or mistake missed the chute and ran on the wing-walls or dam and received injury, the defendants would not be liable, although if no dam had been there no injury would have been received. Or if the pilot gave an improper direction to the boat when entering the chute, and in consequence of that it run against the bank and was broken, and that improper direction was the result of want of proper skill and diligence, or if it resulted from navigating the river with insufficient hands, either in point of number or the requisite qualifications for watermen, the defendants would not be liable.

"The first and second points are answered in the affirmative.

"The third is so, if the dam was not an obstruction, and the injury was the result of mismanagement or mistake.

"The fourth would be so, if the dam was not an obstruction at the time when the river was in a proper state of navigation.

"We cannot charge as requested in the fifth point. If negligence, mismanagement, or rashness was the cause of the injury, the plaintiffs are not entitled to recover; but however rash it might have been in the stage of water to run, if the dam was the cause of the damage the plaintiffs should recover the damage they sustained."

The jury found for the plaintiffs, and judgment on the verdict.

The following errors were assigned in this Court:

1. The Court erred in admitting the pilot to testify, without a release from the plaintiffs.

2. In their answers to the 3d, 4th, and 5th points.

3. The Court erred in charging the jury that if they believed the dam was an obstruction, and that if it were the cause of the damage to the plaintiffs, that they were entitled to recover.

4. The Court erred in their charge to the jury, when they said if it was proved by the plaintiffs that the dam was an obstruction at one time before the occurrence, that it was for the defendants to show that it was not an obstruction at that particular time.

*McCalmont*, for the plaintiffs in error.

1. Pilot not admissible without release: Arnold *v.* Anderson, 2 Y. 93; Humphreys *v.* Reed, 6 Wh. 444; Schuylkill Nav. Co. *v.* Harris, 5 W. &. S. 28.

2, 3, and 4. For a loss arising from mutual negligence, neither party can recover in a court of common law: Simpson *v.* Hand, 6 Wh. 321; Rice *v.* Kugler, Id. 337. It is a good defence to show that the injury so far arose from the negligence of the plaintiff himself that .he might, by ordinary care and caution, have avoided it: Butterfield *v.* Forrester, 11 East, 60; Chaplin *v.* Hawes, 3 C. & P. 554; 3 M. & W. 244; 2 Taunton, 314; Drew *v.* New River Co., 6 C. & P. 754.

*Howe*, contrà.

The opinion of this Court was delivered by

COULTER, J.—The admission of Walters, the pilot, as a witness, which is the first error assigned, is not sustained by the decisions of this Court on the subject. It is true that in commercial cases, to which this is closely allied, the rules of evidence are not so

strictly applied, because persons in some degree interested are often the only witnesses of the transaction on which the case turns. But in this State, and even in England, they have been adopted to a certain extent. The verdict in this cause would not be evidence for the pilot in a suit brought against him for negligence or unskilfulness. If, however, the owners of the dam were made liable, it would free the pilot from responsibility. It may be said that by his exclusion, his unskilfulness or negligence is assumed. On the other hand, however, it may with equal truth be alleged, that his admission would assume that he was not in fault. Starkie, in his Treatise on Evidence, 1 vol. 113, says : " If the cause depend upon the question whether the agent has been guilty of some tortious act, or some negligence in the course of executing the orders of his principal, and in respect of which he would be liable over to the principal, if he failed in the action, the agent is not competent without a release." The question here was whether the loss and wreck of the boat was occasioned by the dam, as an obstruction to the navigation, or by the unskilfulness and negligence of the pilot in navigating her. That was a question for the jury; and if the pilot established by his testimony that the loss was occasioned by the dam, he freed himself from liability to the owners, and threw the liability on the proprietor of the dam. It was ruled in Bennett v. Hethington, 16 S. & R. 195, that a witness, although he cannot give the verdict in evidence, in another suit, yet if he be subject to an encumbrance or duty, he is incompetent. The pilot was subject to an encumbrance and duty to the owner, if the loss was occasioned by his negligence or unskilfulness, and that was one horn of the question at issue before the jury. In 2 Y. 92, it was held that in an action against the owner of a vessel for unskilful stowage of a cargo by the mariners, the master, who was released by the owner, was a competent witness. So also it was ruled in Humphreys v. Read, 6 Wh. 435, that the captain of a canal boat and the steersman were not competent witnesses for the owner, when the defence to the action was an injury to the freight, in consequence of running on a stone in the bottom of the canal, by which water was let in and the freight injured, without a release. And in the Schuylkill Navigation Company v. Harris, 5 W. & S. 28, it was decided, that in a suit against the Canal Company to recover damages for an injury to the plaintiff's boat, occasioned by the misconduct of the lock-keeper, the master of the boat was not a competent witness for the plaintiff, without a release, when it was

alleged that the injury arose from the master's mismanagement. The defence in this cause is that the loss accrued or happened in consequence of the unskilfulness or negligence of the pilot. He was therefore incompetent as a witness for the owner of the boat, without a release.

The other objections to evidence are not sustained; and the several answers of the Court to the points proposed by defendant's counsel state the law fairly on the subject. It was not necessary that the plaintiff should detain his boat in the pool of the dam until the waters were assuaged. Even if there was some temerity in attempting a passage at the time, it is no reason why he ought not to recover, if the dam was an obstruction, obstacle, and hindrance to the navigation. If it was so, the defendants were wrongdoers, and legally answerable to those who suffered damage by their wrong. Possibly a timid man would have lain by in the pool for days. But there is a current in the affairs of men, as well as in the river. And such is the energy, enterprise, and vigour of the American character, that they will take advantage of that current to reach success and a market, even at risk; and who has a right to obstruct them on the highway? It is even possible that by good luck the plaintiff might have got through, notwithstanding the peril; but those favours of fortune, which surpass ordinary prudence and care, and are looked at with wonder and amazement, do not form the rule from which the law is drawn. The Court carefully say to the jury, in answer to the plaintiffs' points, that they must be satisfied that the dam was an obstruction to the navigation, at ordinary stages of water, and that the defendants were not answerable, if the wreck was occasioned by the rashness, negligence, or mismanagement of the plaintiff or his crew. But that if the dam was an obstruction to the navigation, and the cause of the wreck, the defendants were answerable, although the stream was high and turbulent. These are the true elements from which the rule of law on the subject is drawn. Ordinary care, diligence, and skill were required by the owner and his subordinates; but if with these, the dam was such an obstruction to the navigation as to occasion the wreck, the defendant must answer to the plaintiffs in damages, no matter what was the stage of the water.

In those streams of the interior of the state, which lead to the pine and mineral regions, navigation is most practicable in flood time. And he who erects an obstacle to it injures the public as

well as individuals, and is not entitled to any relaxation of the rigid rules of law.

The judgment is reversed on the first error assigned, to wit, the admission of Walters, the pilot, as a witness without a release, and

A *venire de novo* awarded.